818 P.2d 855

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Robert EDMONDSON, Defendant–
Appellant.**

**No. 12103.**

Court of Appeals of New Mexico.

May 28, 1991.

Certiorari Granted July 11, 1991.

Certiorari quashed Sept. 25, 1991.

Donnelly, J., concurred in part and dissented in part and filed an opinion.

---

Samantha Dunning, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HARTZ, Judge.

Our opinion in this criminal appeal has two parts. Because the issues treated in part II are of no precedential value and are matters of concern to the parties only, part II will not be published.

### I.

Defendant was convicted on two counts of issuance of worthless checks. He contends that the trial court improperly enhanced his sentences as a habitual offender, *see* NMSA 1978, § 31–18–17 (Repl. Pamp.1990), because the basis for the enhancement was a probated Texas conviction that had been set aside by a Texas court. He argues that the New Mexico habitual-offender statute does not permit the use of such a conviction and that in any case such use is prohibited by Article IV, Section 1 of the United States Constitution, the Full Faith and Credit Clause, because Texas law does not permit such convictions to be considered for habitual-offender sentencing. We affirm.

The question before us is whether defendant's conviction by a Texas court constitutes a "prior felony conviction" for purposes of the New Mexico habitual-offender statute. That statute defines "prior felony conviction" as:

1. [A] conviction for a prior felony committed within New Mexico whether within the Criminal Code or not; or

2. any prior felony for which the person was convicted other than an offense triable by court-martial if:

(a) the conviction was rendered by a court of another state, the United States, a territory of the United States or the commonwealth of Puerto Rico;

(b) the offense was punishable, at the time of conviction, by death or a maxi-

mum term of imprisonment of more than one year; or

(c) the offense would have been classified as a felony in this state at the time of conviction.

NMSA 1978, § 31–18–17(A) (Repl.Pamp. 1990). There is no dispute that a valid judgment of conviction for a felony punishable by imprisonment of more than one year was entered against defendant by a Texas court. That is all that is necessary under our statute.

The complication in this case is that defendant was placed on probation after his conviction. Upon successful completion of his probation, the indictment against defendant was set aside by a Texas court.[1] The conviction could not be considered under the Texas habitual-offender statute. *See Ex parte Murchison*, 560 S.W.2d 654 (Tex. Crim.App.1978) (en banc). It does not follow, however, that a New Mexico court cannot use the conviction for purposes of our habitual-offender statute.

Defendant relies upon *State v. Burk*, 101 N.M. 263, 680 P.2d 980 (Ct.App.1984). That case is distinguishable. There had never been a conviction of Burk. Under Texas law, Tex.Code Crim.Proc.Ann. art. 42.12, § 3d(a) (Vernon 1979), he had been placed on probation without any adjudication of guilt being entered. We noted, "Texas courts hold that because no adjudication of guilt is entered, the trial court's action in deferring proceedings is not deemed a 'conviction.'" 101 N.M. at 264, 680 P.2d at 981. In contrast, defendant here was placed on probation after a judgment of conviction. *See* Tex.Code Crim. Proc.Ann. art. 42.12, §§ 3, 3a.

The reason given by the Texas courts for forbidding the use of a conviction such as defendant's for habitual-offender sentencing is that such a conviction does not become "final" unless and until the probation is revoked. *See Ex parte Murchison.* That use of the word "final," however, is idiosyncratic. In some respects the conviction is treated as final. For example, the

defendant may appeal the conviction at the time he is placed on probation, Tex.Code Crim.Proc.Ann. art. 42.12 § 8(b), and errors at the original trial may not later be raised on an appeal from revocation of probation. *See Whetstone v. State*, 786 S.W.2d 361 (Tex.Crim.App.1990) (en banc); *Carnes v. State*, 478 S.W.2d 940 (Tex.Crim.App.1972). Similarly, in *Dallas County Bail Bond Board v. Stein*, 771 S.W.2d 577 (Tex.Ct. App.1989), the court held that a probated conviction is final for purposes of eligibility to be licensed as a bail bondsman. The court wrote:

> By successfully fulfilling the terms of his probation, the probationer is released from such disabilities at the expiration of the period of probation. This release does not affect the finality of the conviction; rather, it merely removes those legal disadvantages associated with such conviction. *Id.* at 582 (citation and emphasis deleted).

The conviction can even be used for sentencing under the general sentencing statutes. Texas law provides that despite dismissal of the charge the defendant's "conviction or plea of guilty shall be made known to the court" if he is again convicted of a crime. Tex.Code Crim.Proc.Ann. art. 42.12(7). *See* Tex.Code Crim.Proc.Ann. art. 37.07(3); *Glenn v. State*, 442 S.W.2d 360, 362 (Tex.Crim.App.1969); *McLerran v. State*, 466 S.W.2d 287 (Tex.Crim.App.1971). In essence, when the Texas courts have spoken of a judgment of conviction followed by probation as not being a "final conviction," they have been saying only that the conviction cannot be used for purposes of the Texas habitual-offender statute.

In any event, there is no requirement in New Mexico's habitual-offender law that a prior conviction be "final." *Burk* made no reference to *final* convictions. The court simply held, "There was no conviction." 101 N.M. at 265, 680 P.2d at 982. Nor is there support elsewhere in our law for a requirement of finality. The New Mexico

---

**1.** The court's order also "set aside" the judgment of conviction, although the governing Texas statute does not provide for that specific relief.

*See* Tex.Code Crim.Proc.Ann. art. 42.12 § 7 (Vernon 1979) (may set aside verdict or permit withdrawal of plea).

habitual-offender statute contains no language stating that a conviction must be final before it can be considered for habitual-offender sentencing. No reported case has so interpreted the statute. On the contrary, *State v. Tipton*, 77 N.M. 1, 419 P.2d 216 (1966), permitted use of a non-final conviction. The court held that a guilty plea by itself constituted a conviction that could be used pursuant to the habitual-offender statute, even though sentence had not been imposed on the plea. *Accord Padilla v. State*, 90 N.M. 664, 568 P.2d 190 (1977). Under New Mexico law a guilty plea is not "final." An appeal can be taken only after entry of judgment. *See* NMSA 1978, § 39–3–3 (Orig.Pamp.).

 The simple fact of the matter is that defendant was convicted under the laws of the State of Texas. If we are to ignore that conviction for purposes of the New Mexico habitual-offender statute, it must be because either (1) the New Mexico statute does not permit the use of a conviction in circumstances such as in this case or (2) even if New Mexico would otherwise use the conviction, New Mexico incorporates the law of the state where the conviction was entered and will consider only those convictions that can be used under the habitual-offender statute of that state.

 The first possibility is foreclosed by New Mexico precedent. Our supreme court has held that a pardon does not prevent the use of a prior conviction for habitual-offender sentencing in New Mexico. *Shankle v. Woodruff*, 64 N.M. 88, 324 P.2d 1017 (1968). More directly in point, in *Padilla* our supreme court permitted use of a prior New Mexico conviction even though the charge was later dismissed after successful completion of a deferred sentence. We see no principled way to distinguish the circumstances in these cases from what happens in Texas upon successful completion of probation, as described above in *Dallas County Bail Bond Board vs. Stein*. The Texas court's action was taken for rehabilitative reasons, not because of any question regarding defendant's guilt.[2] Nothing in our habitual-offender statute would permit a distinction between (1) a pardon or a dismissal after a deferred sentence and (2) the action taken by the Texas court.

 As for the possibility that New Mexico incorporates the law of the state of conviction, the language of the New Mexico habitual-offender statute does not suggest that when considering a conviction from another state, New Mexico will defer to the other state's determination that the conviction should not be used for habitual-offender purposes. Our statute does not require that the state where the offense occurred have a habitual-offender sentencing scheme (in the absence of which *no* conviction could be used for habitual-offender sentencing in that state), or that the particular felony involved is one that can be used for habitual-offender sentencing in the other state. *See State v. Calvin*, 244 Or. 402, 418 P.2d 821 (1966) (Oregon can use California forgery conviction even though California did not permit forgery to be used as a predicate offense in a habitual-criminal charge). In *Shankle* our supreme court strongly endorsed the analysis and rationale of the California Supreme Court's decision in *People v. Biggs*, 9 Cal.2d 508, 71 P.2d 214 (1937), and adopted that opinion's observation that convictions are to be included within the general provisions of a habitual-offender statute unless they are expressly excluded by the statute. 64 N.M. at 93–94, 324 P.2d at 1020. It is of particular interest that *Biggs* permitted the use of a Texas felony conviction even though (a) the conviction had been pardoned and (b) under Texas law at the time, *Scrivnor v. State*, 113 Tex.Cr.R. 194, 20 S.W.2d 416 (App.1928), a pardoned conviction could not be used for habitual-offender sentencing. *See Biggs*, 9 Cal.2d at 514, 71 P.2d at 217; *cf. Carlesi v. New York*, 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914) (for purposes of habitual-offender sentencing, state may use federal conviction par-

---

**2.** If a conviction has been set aside because of a concern about its validity—for example, because of improper evidentiary rulings at trial— New Mexico could not legitimately use the conviction for habitual-offender sentencing. *See State v. Moser*, 78 N.M. 212, 430 P.2d 106 (1967).

doned by president). *But see People v. Terry*, 61 Cal.2d 137, 390 P.2d 381, 37 Cal. Rptr. 605 (en banc) (Oklahoma pardon given same effect in California that it would have in Oklahoma), *cert. denied*, 379 U.S. 866, 85 S.Ct. 132, 13 L.Ed.2d 68 (1964), *rejecting sub silentio, People v. Dutton*, 9 Cal.2d 505, 71 P.2d 218, *appeal dismissed*, 302 U.S. 656, 58 S.Ct. 365, 82 L.Ed. 508 (1937). Also persuasive is that the federal courts have repeatedly permitted expunged state convictions to serve as the predicate offenses for possession of a firearm by a convicted felon. *See, e.g., United States v. Gray*, 692 F.2d 352 (5th Cir.1982).

The rule of lenity does not compel us to defer to Texas law. The United States Supreme Court recently wrote of the rule as follows:

> We have repeatedly "emphasized that the 'touchstone' of the rule of lenity 'is statutory ambiguity.'" *Bifulco v. United States*, 447 U.S. 381, 387 [100 S.Ct. 2247, 2252, 65 L.Ed.2d 205] (1980), quoting *Lewis v. United States*, 445 U.S. 55, 65 [100 S.Ct. 915, 921, 63 L.Ed.2d 198] (1980). Stated at this level of abstraction, of course, the rule
>
> > "provides little more than atmospherics, since it leaves open the crucial question—almost invariably present— of *how much* ambiguousness constitutes * * * ambiguity." *United States v. Hansen*, 249 U.S.App.D.C. 22, 30, 772 F.2d 940, 948 (1985) (Scalia, J.) (emphasis added), *cert. denied*, 475 U.S. 1045 [106 S.Ct. 1262, 89 L.Ed.2d 571] (1986).
>
> Because the meaning of language is inherently contextual, we have declined to deem a statute "ambiguous" for purposes of lenity merely because it was *possible* to articulate a construction more narrow than that urged by the Government. See, *e.g., McElroy v. United States*, 455 U.S. 642, 657–658 [102 S.Ct. 1332, 1341, 71 L.Ed.2d 522] (1982). Nor have we deemed a division of judicial authority automatically sufficient to trigger lenity. *See, e.g., United States v. Rodgers*, 466 U.S. 475, 484 [104 S.Ct. 1942, 1948–49, 80 L.Ed.2d 492] (1984). If that were sufficient, one court's unduly narrow reading of a criminal statute would become binding on all other courts, including this one. Instead, we have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to "the language and structure, legislative history, and motivating policies" of the statute. *Bifulco v. United States, supra*, [447 U.S.] at 387 [100 S.Ct. at 2252]; see also *United States v. Bass*, 404 U.S. 336, 347 [92 S.Ct. 515, 522, 30 L.Ed.2d 488] (1971) (court should rely on lenity only if, "[a]fter 'seiz[ing] every thing from which aid can be derived,'" it is "left with an ambiguous statute," quoting *United States v. Fisher*, 2 Cranch 358, 386 [2 L.Ed. 304] (1805) (Marshall, C.J.)).

*Moskal v. United States*, —— U.S. ——, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990) (emphasis in *Moskal*).

■ The rule of lenity as so defined is of no assistance to defendant here. The chief purposes of habitual-offender statutes are (1) the deterrent/rehabilitative purpose of discouraging those who have previously committed serious crimes from engaging in similar conduct within New Mexico and (2) the punitive/protective purpose of incarcerating for a longer period of time those who have shown a repeated inclination to commit serious offenses. In consonance with those purposes our supreme court has not read exceptions into the broad language of the habitual-offender statute. As already noted, *Shankle* adopted the view that convictions coming within the general provisions of the New Mexico statute are included unless expressly excluded.

We see no compelling reason to read an exception into our statute for Texas convictions such as defendant's. Indeed, it is unclear what policy would be advanced by doing so. Once the former Texas offender commits a new offense in New Mexico, he has demonstrated the failure of rehabilitation. How does it encourage rehabilitation to tell someone that if he commits another offense, the penalty will not be as harsh as it might have been? It would seem that rehabilitation would be encouraged more

by *increasing* the penalty for one who has had a prior conviction pardoned or expunged. And certainly one who has obtained a deferred sentence under Texas law is every bit as deserving of increased punishment as one whose sentence was not deferred. The United States Supreme Court suggested as much in the concluding sentence of *Carlesi:*

> Indeed, we must not be understood as intimating that it would be beyond the legislative competency to provide that the fact of the commission of an offense after a pardon of a prior offense, should be considered as adding an increased element of aggravation to that which would otherwise result alone from the commission of the prior offense.

233 U.S. at 59, 34 S.Ct. at 578.

Texas itself is ambivalent about the use of a probated conviction for purposes of sentencing for offenses committed later. Although an unrevoked probated conviction cannot be used under that state's habitual-offender statute, such convictions are to be considered by the judge or jury imposing sentence within the broad ranges allowed by Texas law. *See Glenn v. State; McLerran v. State; Mays v. Estelle*, 505 F.2d 116 (5th Cir.1974). For a first-degree felony the range of punishment is five years to ninety-nine years, Tex.Penal Code Ann. § 12.32 (Vernon 1974); for a second-degree felony the range is two years to twenty years, *id.* § 12.33; and for a third-degree felony the range is two years to ten years. *Id.* § 12.34. Theoretically, a conviction of a charge that had been dismissed could result in a sentence being increased from five years to ninety-nine years, a substantially greater differential than would occur under New Mexico's habitual-offender statute.

The sole purpose, other than lenity for the sake of lenity, we can see that could be served by refusing to use the probated conviction for habitual-offender sentencing is encouragement of plea bargaining. An accused may be more likely to plead guilty to an offense if the conviction could not be used for habitual-offender sentencing in the future. This purpose may be legitimate, but it should not override New Mexico public policy.

■ In short, nothing in the language of the New Mexico habitual-offender statute, no policy implicit in the statute, not even any substantial policy of the State of Texas, suggests that defendant's conviction should not be used under New Mexico's habitual-offender statute. In that circumstance, the rule of lenity has no application.

Finally, a contrary result is not compelled by the Full Faith and Credit Clause.

■ It is not at all clear that the Full Faith and Credit Clause applies to criminal matters. *See Nelson v. George*, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970) (state not required to enforce penal judgment of sister state); *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892) (suggesting that state cannot enforce penal judgment of another state, including one for a monetary penalty). *But see Farmland Dairies v. Barber*, 65 N.Y.2d 51, 478 N.E.2d 1314, 489 N.Y.S.2d 713 (1985) (full faith and credit requires New York to abide by New Jersey criminal judgment stating that it could not be used in civil proceeding). Even assuming that it does, we believe that it would rarely, if ever, compel one state to be governed by the law of a second state regarding the punishment that can be imposed for a crime committed within the first state's boundaries. As the United States Supreme Court said in a somewhat different context, "[F]ull faith and credit does not automatically compel a forum state to subordinate its own statutory policy to a conflicting public act of another state; rather, it is for this Court to choose in each case between the competing public policies involved." *Hughes v. Fetter*, 341 U.S. 609, 611, 71 S.Ct. 980, 982, 95 L.Ed. 1212 (1951) (Wisconsin must recognize Illinois cause of action for wrongful death).

A state cannot express its public policy more strongly than through its penal code. When a state defines conduct as criminal and sets the punishment for the offender, it is conveying in the clearest possible terms its view of public policy. Full faith and credit ordinarily should not require a

state to abandon such fundamental policy in favor of the public policy of another jurisdiction.

For example, perhaps the most compelling judgment by another jurisdiction would be a verdict of acquittal in a criminal trial. Yet full faith and credit does not bar a state from prosecuting a person for violation of its own statute despite an acquittal by another jurisdiction on a charge of the identical conduct. *See Turley v. Wyrick,* 554 F.2d 840 (8th Cir.1977) (state and federal robbery charges), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978); *cf. Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1984) (under dual-sovereignty doctrine, two states can punish defendant for same offense without violating Double Jeopardy Clause).

■ Even when a state's criminal laws are not involved, full faith and credit does not require the state to recognize expungement of a conviction by the state in which the conviction was rendered. In *Ballard v. Board of Trustees of Police Pension Fund,* 452 N.E.2d 1023 (Ind.Ct.App.1983), the police pension fund board discontinued Ballard's pension pursuant to a statute permitting such action if the pensioner was convicted of a crime constituting a felony. The felony had been committed in Arizona. An Arizona court had entered an order setting aside Ballard's conviction and restoring his civil rights. The Indiana court affirmed the action of the pension fund board, stating: "It is the declared public policy of Indiana that police pensioners who are convicted of a felony may have their pension benefits terminated.... The Full Faith and Credit clause does not require a state to apply another state's law in violation of its own legitimate public policy." *Id.* at 1026; *see White v. Thomas,* 660 F.2d 680, 685 (5th Cir.1981) (expungement of California court record did not prohibit Texas sheriff from firing deputy for failing to disclose California detention in his employment application), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982); *Thrall v. Wolfe,* 503 F.2d 313 (7th Cir.1974) (full faith and credit did not prohibit IRS from denying firearm license to

person whose prior state conviction had been pardoned). *But see Farmland Dairies v. Barber.*

■ Turning to habitual-offender statutes in particular, the deterrent and punitive purposes of those statutes argue strongly in favor of upholding their provisions against any challenge under the Full Faith and Credit Clause. Thus, it is not surprising that other jurisdictions have determined that the clause does not prevent a state from using as a predicate offense for its habitual-offender statute an offense in another state that has been pardoned, *see United States v. Maroney,* 373 F.2d 908 (3d Cir.1967); *Groseclose v. Plummer,* 106 F.2d 311 (9th Cir.), *cert. denied,* 308 U.S. 614, 60 S.Ct. 264, 84 L.Ed. 513 (1939), or that could not be used for habitual-offender sentencing in the other state. *See State v. Calvin; People v. Dippolito,* 88 A.D.2d 211, 452 N.Y.S.2d 655 (1982) (New York could use for habitual-offender sentencing a California conviction for burglary that would be felony in New York but was misdemeanor in California). *But cf. People v. Willis,* 79 A.D.2d 1036, 435 N.Y.S.2d 38 (1981) (without reference to Full Faith and Credit Clause, New York court refuses to use for habitual-offender sentencing a Texas offense that, because charge was dismissed, could not be used for such purposes in Texas). The policies behind the decision of Texas not to use a probated conviction for habitual-offender purposes, which have been analyzed above, are not so compelling that full faith and credit requires that the Texas rule prevail over New Mexico law.

For the above reasons, we affirm the habitual-offender enhancements of defendant's sentences.

IT IS SO ORDERED.

BIVINS, J., concurs.

DONNELLY, J., dissents.

DONNELLY, Judge (concurring in part; dissenting in part).

I concur in the majority's opinion, except as to the issue involving the propriety of enhancing defendant's sentence under the

New Mexico habitual criminal statute based upon a prior Texas criminal proceeding which was ordered dismissed and the conviction set aside by the Texas court.

Defendant contends that the trial court improperly enhanced his New Mexico sentence as an habitual offender relying upon an invalid prior Texas conviction. *See* NMSA 1978, § 31–18–17 (Repl.Pamp.1990). At the habitual criminal proceeding, defendant introduced an exhibit consisting of an order from a Texas court discharging him from probation and setting aside the Texas conviction which was relied upon by New Mexico authorities to enhance his sentence in the present case. The exhibit shows that the Texas court found that because defendant had "satisfactorily completed one-third or two years of his probationary period, and * * * complied with all the terms and conditions of said probation":

> *[T]hat the Judgment of Conviction heretofore entered against the defendant in this case be, and the same is hereby set aside, the indictment dismissed, * * * and the defendant is hereby released from all penalties and disabilities resulting from the Judgment of Conviction in this cause, and the arrest entry in this offense [shall] hereby be expunged.* [Emphasis added.]

As evidenced by the language of the order quoted above, the Texas court expressly directed that the judgment of "conviction" be set aside. Thus, when the New Mexico court sought to subsequently enhance defendant's sentence under the habitual criminal statute, the Texas "conviction" relied upon by the prosecution here had been vacated.

The majority opinion emphasizes that prior decisions of this state relating to our habitual criminal statute draw a distinction between a final judgment and sentence in a criminal case and a *"conviction"* adjudicating guilt, reciting that since defendant was initially adjudged to be guilty of a felony in Texas nothing "suggests that defendant's conviction should not be used under New Mexico's habitual-criminal offender statute" to enhance defendant's sentence in this state. I think this analysis is at odds with the Texas judgment and ignores the fact that the order of the Texas court had not just discharged defendant from probation but expressly set aside defendant's Texas "conviction" and ordered that the criminal indictment against him be dismissed. Thus, the effect of the majority opinion is to expand the interpretation of our state's habitual criminal statute to hold that a defendant's "conviction" in another state amounts to a binding "conviction" for purposes of enhancement of his sentence in New Mexico, even where the foreign *"conviction"* relied upon by this state has been ordered to be set aside in Texas and is no longer final. In my view, use of a vacated Texas "conviction" to enhance defendant's New Mexico conviction is inconsistent with *State v. Burk*, 101 N.M. 263, 680 P.2d 980 (Ct.App.1984), and leads to an incongruous application of New Mexico law and attempts to breathe life into a Texas conviction which Texas courts have directed be set aside.

*Padilla v. State*, 90 N.M. 664, 568 P.2d 190 (1977), relied upon by the majority, is distinguishable from the present case. There, defendant was convicted of a felony in a prior *New Mexico* criminal proceeding and a deferred sentence was imposed. Following completion of probation the case was dismissed. The court held that the term "conviction" as used in the deferred sentencing statute was a finding of guilt and did not include the imposition of a sentence. In the instant case the finding of guilt was ordered set aside by the Texas court.

In Texas, a prior probated sentence entered by a Texas court pursuant to an adjudication of guilt is not available to enhance punishment for a subsequent offense unless the defendant's probation has been revoked. *Dominque v. State*, 787 S.W.2d 107 (Tex.Ct.App.1990) (prior probated sentence entered by Texas court is not a final conviction and thus is not available to enhance punishment for a subsequent offense unless probation has been revoked); *Rodgers v. State*, 744 S.W.2d 281 (Tex.Ct.App. 1987) (burden is on state to make a prima facie showing that any conviction relied

upon for enhancement of punishment became final prior to commission of the present offense).

This court has previously recognized that Section 31–18–17(A)(2)(a) requires that a conviction be rendered by a court of that state. *State v. Burk.* In *Burk,* a Texas court issued an order of probation following the entry of a guilty plea. This court looked to Texas law to determine the effect of the Texas proceeding for purposes of New Mexico's habitual offender statute and affirmed the trial court's decision not to enhance the defendant's sentence. *Id.* The *Burk* court noted that because no adjudication of guilt was entered by the Texas court, the court's action in deferring proceedings was not a "conviction" for purpose of this state's habitual criminal statute. *Id.,* 101 N.M. at 265, 680 P.2d at 982.

The record reflects that the Texas criminal conviction relied upon by the state in the instant case as a basis for the enhancement of defendant's New Mexico sentence was dismissed by the Texas court and his arrest record was ordered expunged. Absent a showing that our state legislature, in adopting the provisions of this state's habitual criminal statute, Section 31–18–17, intended that a prior conviction incurred in a sister state and subsequently ordered set aside, may nevertheless serve as the basis for enhancing a sentence imposed upon defendant in New Mexico, I would apply the rule of lenity. *See State v. Keith,* 102 N.M. 462, 697 P.2d 145 (Ct.App.1985) (statutes authorizing a more severe punishment upon conviction of a subsequent criminal offense are penal in nature and strictly construed; doubts about the construction of penal statutes are resolved in favor of the rule of lenity). Thus, I believe that enhancement of defendant's sentence in the present case based upon the Texas conviction that was subsequently set aside did not constitute a final judgment of conviction for purposes of enhancement of defendant's sentence under the provisions of Section 31–18–17 and exceeds the scope of our habitual sentencing act.

I would affirm defendant's convictions but would remand the case for resentencing.